WILLIAM G. RAOUL, plaintiff in error, *vs.* E. M. NEWMAN, defendant in error.

1. When the action is on an account for services, etc., and the plea is "not indebted," the charge of the court should not concentrate the attention of the jury upon the single question of whether there was or was not a contract of employment.

2. When the value of services is an essential element of the plaintiff's case, and the plaintiff himself is the only witness on the point, it is error for the court to say to the jury that there seems to be no conflict in the evidence as to value, and that they should render a verdict for the value proved, if they find that the plaintiff was employed by the defendant  This is to express an opinion that some value has been proved, and that the plaintiff's testimony is credible.

3. Where the plaintiff, if employed at all on the defendant's credit, was called to treat a minor in a sudden and dangerous emergency, when the father was absent, the scope and duration of the employment are no less material than the fact of employment itself.  It ought to be decided by the jury whether, under the circumstances, the arrival of the father terminated the engagement, and if not, whether it continued operative after the services immediately necessary were rendered

4. The mere fact that the defendant employed the plaintiff as a physician, is not decisive of the liability of the former to be personally responsible for the compensation.  If there was a great and overwhelming calamity to the child of an absent parent, rendering medical aid instantly necessary, and the plaintiff comprehended the situation, and entered on the service without reasonable cause to believe that the defendant was engaging his own credit, the parent would be responsible as for necessaries, and the defendant would be treated as his agent to call the physician.

Charge of court.  Contracts.  Principal and agent.  Parent and child.  Before Judge HILL.  Bibb Superior Court. April Term, 1877.

This was complaint by Newman against Raoul, on an account for medical services rendered one Kit Rutland, on the employment of the defendant.  The jury found for the plaintiff $425.00.  The defendant moved for a new trial, on numerous grounds, but mainly because of alleged errors in the charge of the court.  The charge, so far as material, is set forth in the opinion.  The motion was overruled, and the defendant excepted.

LYON & NISBET, for plaintiff in error.

DESSAU & STROHECKER, for defendant.

BLECKLEY, Judge.

The defendant in error is a physician, and the action was by him against the plaintiff in error, for a surgical and medical bill, amounting to $425.00. The patient treated was a negro boy, thirteen or fourteen years of age, and the occasion for treatment arose from injuries received by the boy on the track of the Central Railroad, in the yard of the company's warehouse. Both his thighs were broken, his arm was crushed, his hand was badly mangled, and his scrotum was torn asunder, so that his testicles rested on the thighs. The evidence is in strong and stubborn conflict as to some of the material facts; but stated most favorably for the physician, the case is briefly this: He and the plaintiff in error were strangers. The latter was an officer of the Central Railroad, and casually noticed a crowd collected about where the boy was hurt—he not knowing of it before. On going up to see what was the matter, and discovering the boy's condition, he requested some one to run for a doctor. A negro who heard the request, or to whom it was addressed, went and called in Dr. Newman, the defendant in error. The officer, in the meantime, applied himself to afford such relief to the sufferer as he could. While so engaged, he called out to know if the doctor had come. In response Dr. Newman presented himself, and said he was a physician. The officer replied, "All right; go a-head; do what you can for the boy." Some consultation followed, in which Dr. Newman suggested that the patient ought to be removed. The officer concurred, procured a wagon for the purpose, and the boy was put into the wagon. About that time the boy's father arrived. Another physician—Dr. Holmes—having also arrived, the father was requested by Dr. Holmes, to take his choice. The father answered that he had no choice; that he did not know either of them, but that as Dr. Newman was first, he supposed he was the one. Dr. Holmes then retired, as did the officer, and neither of them interfered further. The boy was removed

in the wagon to his father's house, or some other, and Dr. Newman there dressed his wounds, performed the needful surgical operations, and treated him until he was cured. His bill, as declared upon, amounts to $290.00 for reducing fractures; $30.00 for replacing testicles and stitching scrotum; $30.00 for setting and stitching the mangled hand; and $75.00 for twenty-five visits, redressing wounds, and furnishing medicines. He applied to the father for money, and obtained as much as fifteen dollars, but it was taken as a loan, and a note was given. He made out no account against the father, and did not consider him as his debtor for anything. He, however, did make out a bill against the Central Railroad Company, and requested the plaintiff in error to approve it, and also corresponded on the subject with the president of the company. The officer refused to approve, and the president refused to pay. Dr. Newman then brought his action against the officer for the amount of the bill, treating it as a demand against him personally. On the question of amount, the only evidence was that of the physician himself, and he testified it was reasonable, etc. Neither the railroad company, nor the plaintiff in error, so far as appears, had any interest in the boy or in his services.

The court charged the jury, after some preliminary observations, thus: " There seems to be no conflict of evidence about the value of the services, or that the plaintiff rendered them. The contest for your attention is, whether the plaintiff was employed by the defendant, Mr. Raoul, to attend to the case. If there be any conflict of testimony in the case, it is your duty to reconcile it if you can and find what is the truth. Inquire if the plaintiff rendered the services, and if so, how he came to do so. What are the facts and circumstances under which he took charge of the case? If you find that he was employed by Mr. Raoul, the defendant, then find a verdict for the plaintiff, and find the amount and value of the services proved. If you find that he was not employed by Mr. Raoul; that he

had nothing to do with it; that plaintiff went there on his own account, and engaged, on his own volition, in the matter, then your verdict should be for the defendant. The defendant denies the claim set up by plaintiff—denies that he sent for him to take charge of the case—and if you so find, as claimed by defendant, then you will find for defendant.

1. The plea was "not indebted," and the plaintiff's whole case was thus in issue. It was, therefore, error to narrow the inquiry, by instructing the jury, that the contest for their attention was, whether the plaintiff was employed by the defendant.

2. Again, the plaintiff could not recover without establishing the value of his services. The court said to the jury that there seemed to be no conflict of evidence about the value of the services, or that the plaintiff rendered them; and then went on to direct a finding for the plaintiff for the amount and value of the services proved, on the sole condition that the jury should find that the plaintiff was employed by the defendant. What was this but a direct expression of opinion by the court that a material fact in the case, namely, the value of the services, was made out by the evidence? The plaintiff had been pointedly contradicted by the defendant as to the defendant's declarations at the time of the alleged employment. How could the court know but what the plaintiff stood discredited by that contradiction? and if he did, there was no credible evidence at all before the jury, either as to what specific services he performed, or what was their value. Or the jury might have thought that the plaintiff's testimony needed no discounting on other points of the case, but that his interest subjected it to more or less discount on the question of value, as to which he was the sole witness. Having that whole field to himself, the jury, but for the intimation of the court, might have believed that it required to be very closely scrutinized by them.

3. Besides, though it were true that the defendant em-

ployed the plaintiff in the exact terms testified to by the latter, " All right, go ahead, do what you càn for the boy," and though it were true that both parties understood that the employment was on the defendant's responsibility and personal credit, yet, it would not follow that the plaintiff, under such employment, would have a right to render any more service than the pressing emergencies of the occasion called for. It would be strange if, without any further communication between the parties on the subject, (and none seems to have taken place,) the plaintiff could go on to the extent of twenty-five visits, and debit the defendant with his whole bill. It may admit of serious question whether the employment continued to operate beyond the time when the boy's father arrived, and took charge of his son. Perhaps, in the opinion of a jury, that might be naturally and rationally the period at which the engagement would terminate, as between the plaintiff and the defendant. At all events, the extent and duration of the engagement were no less for the consideration of the jury, than was the question whether there was an engagement at all.

4. It seems, moreover, to have been thought by the court that any employment of the plaintiff by the defendant, however it may have been intended and understood at the time, would render the defendant personally liable. This is not correct. The jury ought to consider all the circumstances, and determine whether the plaintiff believed, and had a right to believe, that the defendant was offering his own credit. If, in the presence of a great and overwhelming calamity to a human being, the defendant was merely acting for the absent father, and the plaintiff so understood it, the father would be liable for any necessary services rendered by the physician, and the defendant would not be liable for anything done by the physician after he became enlightened as to the true situation. For coming to the spot when sent for by the defendant, he would be entitled to fair and reasonable compensation, if he came upon a bare message,

without being advised of the circumstances under which it was sent.

We need not deal further with the grounds of the motion for new trial. For error in the charge, the new trial should have been granted.

Cited for defendant in error, Code, §§ 2714, 2720, 2739, 2740; 3 Johns., 104; 12 *Ga.*, 52; 1 Sel. N. P., 43; 3 Bos. & Puller, 243; 2 Peters, 182; 1 Hilliard on Cont., 250, 251; 1 Addison on Cont., 23; 30 *Ga.*, 426; 57 *Ib.*, 52.

Judgment reversed.