### HOMEOPATHIC HOSPITAL OF ALBANY v. CHALMERS et al.

#### (City Court of Albany. February 8, 1916.)

1. **PARENT AND CHILD** ⊜⟳3(1) —**SUPPORT OF CHILD—PHYSICIAN'S AND HOSPITAL FEES.**

   The parents of a minor are primarily liable for the services of a physician and the hospital fees in the necessary treatment of the minor.

   [Ed. Note.—For other cases, see Parent and Child, Cent. Dig. §§ 33–51; Dec. Dig. ⊜⟳3(1).]

2. **HOSPITALS** ⊜⟳5 — **LIABILITY OF MASTER** — **HOSPITAL BILLS** — **BURDEN OF PROOF.**

   In an action by a hospital to recover its charges for the care of defendant's minor employé, not based on the Workmen's Compensation Act (Consol. Laws, c. 67), the plaintiff must show by a fair preponderance of the evidence an express or implied contract that defendants would pay such fees.

   [Ed. Note.—For other cases, see Hospitals, Cent. Dig. § 12; Dec. Dig. ⊜⟳5.]

3. **EVIDENCE** ⊜⟳148—**COMPETENCY—TELEPHONE CONVERSATIONS.**

   Evidence of a telephone conversation between the representatives of a hospital and an unrecognized person at the other end of the line, who represented that he was talking from defendants' store, but who was not shown to have any authority to bind defendants, is inadmissible to show a contract by defendants to pay the hospital expenses of an employé.

   [Ed. Note.—For other cases, see Evidence, Cent. Dig. § 438; Dec. Dig. ⊜⟳148.]

4. **CONTRACTS** ⊜⟳28(3)—**EVIDENCE OF AGREEMENT—IMPLIED CONTRACTS.**

   In an action by a hospital against the proprietors of a store to recover the fees for the care of an employé of defendants, evidence *held* insufficient to show an implied contract by the proprietors to pay such fees.

   [Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 133–140, 1820, 1821; Dec. Dig. ⊜⟳28(3).]

5. **CONTRACTS** ⊜⟳79—**IMPLIED CONTRACT—PROMISE TO PAY HOSPITAL FEES.**

   Promises by employers to pay the hospital fees of an employé for which they are not primarily liable, made after the services were rendered, are not binding on them in favor of the hospital.

   [Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 357–381; Dec. Dig. ⊜⟳79.]

6. **HOSPITALS** ⊜⟳5—**IMPLIED CONTRACT—REQUEST TO PERFORM SERVICE.**

   A request by employers that a hospital receive and care for an employé does not bind the employers to pay the fees for such care, where they were not primarily liable therefor.

   [Ed. Note.—For other cases, see Hospitals, Cent. Dig. § 12; Dec. Dig. ⊜⟳5.]

Action by the Homeopathic Hospital of Albany, N. Y., against Robert N. Chalmers and others, copartners doing business under the style of John G. Myers Company. Judgment entered for defendants, and complaint dismissed.

Visscher, Whalen & Austin, of Albany (J. Harris Loucks, of Albany, of counsel), for plaintiff.

John J. Scully, of Albany (Charles Irving Oliver, of Albany, of counsel), for defendants.

⊜⟳For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

HALTER, J. This action is brought by the plaintiff against the defendants to recover the sum of $426, which item includes the use of operating room, ambulance fee, care, and maintenance of one James Brannigan.

[1] The evidence fairly shows that the boy was in the employ of the defendants as an errand boy, and was a minor, and, this being so, his parents were primarily liable for his care and maintenance, and were therefore liable for the services of a physician and of the hospital in the necessary care, treatment, and maintenance of the boy while at such institution; therefore the defendants in this case cannot be held for such services, unless there was an express or implied contract on their part to do so.

[2] It is true that, had the plaintiff sought to recover for its services under the provisions of the Workmen's Compensation Act, the defendants *might* have been fairly chargeable for such services for a period of 60 days, subject to the express terms of that statute; but the plaintiff elected to bring its action upon contract, without regard to the terms and conditions of the Workmen's Compensation Law, and therefore, in order that it may recover in such an action, it must show by a fair preponderance of the evidence that there was, between itself and the defendants, either an express or an implied contract that the defendants would pay for the necessary services rendered by the plaintiff in the care and maintenance of the boy at its hospital.

There cannot be any question from the evidence in this case that there was no express contract. As to the question whether there was an implied contract upon the part of the defendants to pay the claim of the plaintiff, the testimony fails to disclose any such contract upon the part of the defendants; on the contrary, the fair preponderance of the evidence shows that the defendants were treating the matter of this claim as coming under the Workmen's Compensation Act, and that therefore, if there was a liability upon the part of any one other than the parents of the boy, it was the liability of the Massachusetts Bonding Company, rather than any liability on their part.

[3, 4] The preliminary conversations had over the telephone by the employés of the hospital with somebody representing that they were talking from the store of the defendants come clearly within the rule as to telephonic communications, and their admissibility and weight as evidence, laid down in Mankes v. Fishman, 163 App. Div. 789, 149 N. Y. Supp. 228, and cases therein collated, and there is nothing in the evidence to show that any person authorized to bind the defendants made any contract with the hospital, either express or implied. There is no evidence that any one at the hospital talking over the telephone recognized or knew the voice of the person talking from the other end of the line, or that it was any one authorized to bind the defendants; nor was there any evidence of attending circumstances sufficient to show that any such person authorized was so talking at the time when the boy was first sent to the hospital, and at the time when the bill for his attendance and care first commenced to run. It is true that the superintendent of the hospital, the witness Miss Little-

·field, did testify that she went to the store of the defendants and asked for some person in authority; that no such person was there, and she was informed that she would be called on the telephone; that later she was called on the telephone; that at the time of such call she knew who was talking, though she does not explain how she obtained her knowledge, nor does she state who such person was. Whatever the conversation may have been at this time, it was concededly after the hospital had entered upon the task of caring for and maintaining the boy, and did not at all disclose who the person was talking to her, nor whether the person was any one who had the authority to bind the defendants, and, if it proves anything, tends to show a disclaimer on the part of the defendants of any liability for the services rendered the boy at the hospital.

[5] The testimony of the witness Griffiths, the president of the hospital corporation, is of very little weight. It is filled with infer-, ences, suppositions, and deductions, rather than with direct statements of what was said, and all of the admissions which he testifies were made, either by the defendants Chalmers or Hackett, were coupled with statements that the Bonding Company should pay the bill, thus indicating that the defendants were at this time rather denying liability on their part than admitting it; and, further, all of these so-called promises were made long after the bill had been incurred, and long after the discharge of the boy from the hospital, and if the defendants were not primarily liable for the care and maintenance of this boy, such statements were not sufficient to bind them.

[6] But, assuming that it has been established by the evidence that there was an express or implied request upon the part of the defendants that the hospital should receive and care for the boy, can it be said, in view of the fact that the defendants were not primarily liable for such care and maintenance, that they were bound, by such request, to pay the charges incident to such reception and care? I think not, for the rule, it seems, is well settled in this state that a party not primarily liable for the support of another is not chargeable with a bill for physician's services rendered to such other person, even upon the request and at the instance of such party not so primarily liable. This principle is fully set out and the rule laid down in the case of McGuire v. Hughes, 207 N. Y. 516, 101 N. E. 460, 46 L. R. A. (N. S.) 577, Ann. Cas. 1914C, 585; and I am of the opinion that this rule applies with equal force and effect to a bill for the nursing, care, and maintenance of a patient at a hospital. The services of a physician rendered to a patient and the services rendered to a patient by a nurse, together with the appliances, room, and the proper food for such patient, are analogous, and the rule established as to the one must prevail as to the other.

I find the defendants are entitled to judgment upon the merits, dismissing the complaint, with costs to be taxed. Extra allowance of $10. Clerk will enter judgment accordingly.